LEON RIDEOUT *vs.* DAVID KNOX & another.

Essex.   November 22, 1888. — January 4, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Constitutional Law — Private Nuisance — High Fences — Malice construed as Malevolence — Evidence.*

The St. of 1887, c. 348, declaring fences or like structures " unnecessarily exceeding six feet in height, maliciously erected or maintained for the purpose of annoying the owners or occupants of adjoining property," to be private nuisances, and

providing a remedy, applies to existing structures subsequently maintained, as well as to those afterwards erected, and is constitutional.

The purpose to annoy, instead of being subordinate to a *bona fide* use of such a structure for a legitimate purpose, must, to bring it within the statute, be the controlling motive, and amount to actual malevolence as distinguished from technical malice.

TORT against David Knox and Elizabeth E. Knox, his wife. The declaration was as follows :

" And the plaintiff says that he is the owner and occupant of a lot of land situate on Johnson Street, in the city of Lynn, in said county, upon which stands his residence, numbered eight in the numbering of the buildings on said Johnson Street, and bounded southeasterly by a lot of land on said Johnson Street owned by the defendants, upon which the house occupied by the defendants as a dwelling now stands. And the plaintiff says that the defendants have maliciously erected and maliciously maintain on their said lot of land, for the purpose of annoying the plaintiff, a fence, or other structure in the nature of a fence, from near the front of said lot on Johnson Street, along the line or near the line which divides the lot of land of the plaintiff from that of the defendants ; that said fence or structure unnecessarily exceeds the height of six feet, and injures the plaintiff in his comfort and the enjoyment of his said estate. Wherefore, an action hath accrued to the plaintiff to recover of the defendants the damage sustained thereby, according to the provisions of chapter 348 of the statutes of the year 1887." *

At the trial in the Superior Court, before *Lathrop*, J., the evidence showed that the plaintiff and the defendants were the occupants of adjoining estates on Johnson Street in Lynn ;

---

* This statute, entitled "An Act in relation to fences and other structures erected to annoy, and for the abatement of nuisances," and " Approved June 2, 1887," is as follows :

" Section 1. Any fence or other structure in the nature of a fence, unnecessarily exceeding six feet in height, maliciously erected or maintained for the purpose of annoying the owners or occupants of adjoining property, shall be deemed a private nuisance.

" Section 2. Any such owner or occupant, injured either in his comfort or the enjoyment of his estate by such nuisance, may have an action of tort for the damage sustained thereby, and the provisions of chapter one hundred and eighty of the Public Statutes concerning actions for private nuisances shall be applicable thereto."

that the structure complained of, which was about seventy-five feet long and eleven feet high, and composed of slats set into posts, was erected in November, 1886, on the order of Mrs. Knox, with the concurrence and assent of her husband, on her land, against the fence which stood on the line dividing the estates of the parties; that the structure was about two and a half feet from some of the windows of the plaintiff's house, and about six inches from one window, the lower part of which was of ground glass; that the cost for material and labor therefor was paid by David Knox out of his own funds, and the bill thereof was made to his wife; that they both agreed upon the form, character, and location of the structure; that David Knox was present while the structure was being erected, and gave directions to the workmen; that it was built for the accommodation of David Knox, and was used by him from the time of construction to the time of the trial; that Mrs. Knox, when notified and requested by the plaintiff to remove the structure, after the St. of 1887, c. 348, took effect, replied that she would have nothing to say about it, as she had left it all to her husband; and that David Knox paid the household expenses and resided at and on the estate, the legal title to which had been in his wife since January 14, 1884.

David Knox testified that the structure in question was erected as a trellis on which to trail vines, and not for the purpose of injuring the plaintiff in the comfort or enjoyment of his estate.

The defendants asked the judge to rule:

" 1. That the plaintiff had no action, as chapter 348 of the Acts of the year 1887 was unconstitutional.

" 2. That the structure must be erected for the sole purpose of annoyance; even if a motive to annoy existed, if it was inferior to a motive of use or adornment of the defendants' estate, and if there was a *bona fide* use of the structure, beneficial to the defendants, the plaintiff cannot recover.

" 3. This action must be discontinued as to David Knox, there being no title in him to the premises on which the structure was erected."

The judge declined to give the first ruling requested, but ruled that the statute was constitutional; defined the terms " mali-

ciously " and " unnecessarily " ; and gave other instructions appropriate to the case.

As to the second request for instructions, the judge, after instructing the jury that the plaintiff must prove that the structure was maliciously maintained for the purpose of annoying the plaintiff, and that " annoying " meant " injuring " the plaintiff, either in his comfort or the enjoyment of his estate, instructed the jury as follows : " The defendants say the structure was not put up for any such purpose ; that it was put up for a perfectly legitimate purpose, namely, as a trellis on which to train vines.   If you believe that that was the sole purpose for which the structure was put up, then the plaintiff has not made out his case.   But if the defendants had in mind in maintaining the structure, or if it was their intention in maintaining it, not only to use it for the purpose of training vines, but also for the purpose of injuring the plaintiff, either in his comfort or in the enjoyment of his estate, then the plaintiff has made out that part of his case."

As to the third request for instructions, the judge instructed the jury as follows : " The rule of law is, that if a person does or directs the doing of an act which cannot be done at all without constituting and creating a nuisance, he is personally responsible, whether he is acting for himself, or for the benefit of another.   If Mr. Knox directed this thing, took part in its erection, either personally or by over-seeing it, and you find that it is a nuisance, within the rules already stated, then the fact that he was not the owner of the estate will not prevent his being held liable."

The jury returned a verdict for the plaintiff for the sum of one cent ; and the defendants alleged exceptions.

*J. R. Baldwin*, for the defendants.

*W. H. Niles & G. J. Carr*, for the plaintiff.

HOLMES, J.   This is an action of tort, under the St. of 1887, c. 348.   The plaintiff has had a verdict for nominal damages, and the first question raised by the bill of exceptions is the constitutionality of the statute.   Another question more or less connected with the former is whether the structure, in order to bring it within the act, must be erected or maintained for the purpose of annoyance as the dominant motive, or whether it is

enough if that purpose existed, although subordinate to a *bona fide* use for legitimate purposes.

At common law, a man has a right to build a fence on his own land as high as he pleases, however much it may obstruct his neighbor's light and air. And the limit up to which a man may impair his neighbor's enjoyment of his estate by the mode of using his own is fixed by external standards only. *Walker* v. *Cronin*, 107 Mass. 555, 564. *Chatfield* v. *Wilson*, 28 Vt. 49. *Phelps* v. *Nowlen*, 72 N. Y. 39. *Frazier* v. *Brown*, 12 Ohio St. 294. Martin, B., in *Rawstron* v. *Taylor*, 11 Exch. 369, 378, 384. See *Benjamin* v. *Wheeler*, 8 Gray, 409, 413.

But it is plain that the right to use one's property for the sole purpose of injuring others is not one of the immediate rights of ownership ; it is not a right for the sake of which property is recognized by the law, but is only a more or less necessary incident of rights which are established for very different ends. It has been thought by respectable authorities, that even at common law the extent of a man's rights in cases like the present might depend upon the motive with which he acted. *Greenleaf* v. *Francis*, 18 Pick. 117, 121, 122. See *Carson* v. *Western Railroad*, 8 Gray, 423, 424 ; *Roath* v. *Driscoll*, 20 Conn. 533, 544 ; *Wheatley* v. *Baugh*, 25 Penn. St. 528 ; *Swett* v. *Cutts*, 50 N. H. 439, 447.

We do not so understand the common law, and we concede further, that to a large extent the power to use one's property malevolently, in any way which would be lawful for other ends, is an incident of property which cannot be taken away even by legislation. It may be assumed, that, under our Constitution, the Legislature would not have power to prohibit putting up or maintaining stores or houses with malicious intent, and thus to make a large part of the property of the Commonwealth dependent upon what a jury might find to have been the past or to be the present motives of the owner.

But it does not follow that the rule is the same for a boundary fence unnecessarily built more than six feet high. It may be said that the difference is only one of degree : most differences are, when nicely analyzed. At any rate, difference of degree is one of the distinctions by which the right of the Legislature to exercise the police power is determined. Some small limita-

tions of previously existing rights incident to property may be imposed for the sake of preventing a manifest evil ; larger ones could not be, except by the exercise of the right of eminent domain. *Sawyer* v. *Davis*, 136 Mass. 239, 243.

The statute is confined to fences and structures in the nature of fences, and to such fences only as unnecessarily exceed six feet in height. It is hard to imagine a more insignificant curtailment of the rights of property. Even the right to build a fence above six feet is not denied, when any convenience of the owner would be served by building higher. It is at least doubtful whether the act applies to fences not substantially adjoining the injured party's land. The fences must be "maliciously erected or maintained for the purpose of annoying" adjoining owners or occupiers. This language clearly expresses that there must be an actual malevolent motive, as distinguished from merely technical malice. The meaning is plainer than in the case of statutes concerning malicious mischief. *Commonwealth* v. *Walden*, 3 Cush. 558. See *Commonwealth* v. *Goodwin*, 122 Mass. 19, 35.

Finally, we are of opinion that it is not enough to satisfy the words of the act that malevolence was one of the motives, but that malevolence must be the dominant motive, — a motive without which the fence would not have been built or maintained. A man cannot be punished for malevolently maintaining a fence for the purpose of annoying his neighbor merely because he feels pleasure at the thought he is giving annoyance, if that pleasure alone would not induce him to maintain it, or if he would maintain it for other reasons even if that pleasure should be denied him. If the height above six feet is really necessary for any reason, there is no liability, whatever the motives of the owner in erecting it. If he thinks it necessary, and acts on his opinion, he is not liable because he also acts malevolently.

We are of opinion that the statute thus construed is within the limits of the police power, and is constitutional, so far as it regulates the subsequent erection of fences. To that extent, it simply restrains a noxious use of the owner's premises, and although the use is not directly injurious to the public at large, there is a public interest to restrain this kind of aggressive annoyance of one neighbor by another, and to mark a definite limit

beyond which it is not lawful to go. See *Commonwealth* v. *Alger*, 7 Cush. 53, 86, 96 ; *Watertown* v. *Mayo*, 109 Mass. 315 ; *Train* v. *Boston Disinfecting Co.* 144 Mass. 523. See also *Talbot* v. *Hudson*, 16 Gray, 417, 423.

Whether the statute is constitutional with reference to fences already in existence when the act was passed, is a more difficult question. We are compelled to construe the act as applying to all fences maintained after it goes into operation. If a fence which was built before the act, and is simply allowed to stand, may be found to be a nuisance, and abated at the expense of the owner, there is a taking of property without compensation which is more marked and significant than in the case of a simple prohibition to build. *Commonwealth* v. *Alger*, 7 Cush. 53, 103. But the case is not so hard as it seems. If the owner of the fence gave leave to the party complaining to take it down, it would show conclusively that the fence was no longer maintained by him for malevolent motives, and therefore would defeat an action for subsequent annoyance. On the whole, having regard to the smallness of the injury, the nature of the evil to be avoided, the quasi accidental character of the defendant's right to put up a fence for malevolent purposes, and also to the fact that police regulations may limit the use of property in ways which greatly diminish its value, we are of opinion that the act is constitutional to the full extent of its provisions. See *Mugler* v. *Kansas*, 123 U. S. 623 ; *Kidd* v. *Pearson*, 128 U. S. 1.

We are of opinion, however, that the exceptions must be sustained on the ground that the construction of the statute embraced in the second request for a ruling was substantially correct, as we have stated, whereas it appears that the request was refused, and the jury were instructed otherwise.

This fence was built before the act of 1887 was passed. The statute could not make the conduct of David Knox, in 1886, unlawful retrospectively. Help given by him in lawfully building the fence on his wife's land did not of itself make him liable, whatever his motives, and did not tend to prove that he maintained the fence. There was no evidence that he did so, unless it is to be found in the ambiguous statement that he used it, which does not seem to have been the ground on which the case was allowed to go to the jury. The reply of Mrs. Knox in his

absence was not evidence against him.   As the exceptions must be sustained upon another ground, it is unnecessary to say more on this branch of the case.                    *Exceptions  sustained.*