# Norton *v.* Randolph.

### *Bill to Abate Nuisance.*

(Decided April 4, 1912. 58 South. 283.)

1. *Nuisance; Private; Injunction.*—Courts of equity have jurisdiction to abate private nuisances by injunction.

2. *Same; Bill; Sufficiency.*—A bill alleging that defendant had erected a high board wall on her premises, and was maintaining it adjacent to complainant's tenements ,that it was unsafe, in that it endangered the adjoining building, and that it was erected for no useful purpose but merely out of malice, did not show that the structure was so dangerous as to constitute a nuisance.

3. *Equity; Pleadings; Demurrer.*—A demurrer admits all the allegation of the pleadings that are well pleaded.

4. *Same.*—A demurrer going to the whole bill on the ground that certain allegations were insufficient, is properly overruled if the bill contains equity in other aspects.

5. *Same; Effect.*—On demurrer the allegations of the bill will be strictly construed against the pleader in so far as opposing conclusions may be drawn.

6. *Courts; Precedent.*—The authority of precedent must yield to the force of reason, and to the paramount demands of justice, and to the decencies of civilization.

7. *Adjoining Landowners; Spite Fence.*—A landowner has no right to maintain a spite fence, which is one erected solely for the malicious purpose of vexing and injuring another landowner in the enjoyment of his premises.

8. *Same; Pleading; Bill.*—A bill alleging that the respondent is maintaining on her vacant lot a dangerous high board fence which excluded the light and air from the rooms in plaintiff's dwelling, and that it did not serve any useful purpose or add anything to the value of respondents property, the complainant not knowing for what purpose it was erected, unless for the purpose of vexing and harassing him, is not sufficient in allegation to show that the structure complained of was a spite fence, such allegations not showing that it was maliciously erected, and otherwise not meeting the requirements of good pleading.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by Richard Randolph against Laura J. Norton, to enjoin the maintenance of a private nuisance. From a decree overruling demurrers to the bill respondent appeals. Reversed and rendered.

GEORGE HUDDLESTON, for appellant. The case made by the bill is not one of a spite fence, and must depend for its equity upon the unsightliness of the structure and the injury it does complainant by depriving him of light and air. The ancient doctrine of light does not obtain in Alabama.—*Ward v. Neal*, 35 Ala. 602. One's motive in exercising a right is immaterial where no legal right of another is infringed, and the fact that it is done from malice does not make it actionable.— *Kiff v. Youmans*, 40 Am. Rep. 453; *McCune v. Norwich*, 79 Am. Dec. 278; *Humphrey v. Douglass*, 34 Am. Dec. 668. The doctrine of spite fence outside the states having a statute on that subject, finds no support except in Michigan and North Carolina.—*Barger v. Barringer*, 25 L. R. A. (N. S.) 831. In support of the view that a spite fence is not actionable, counsel cite a number of cases from New York (19 L. R. A. 99; Ohio (40 L. R. A.) Kansas (44 Am. Rep. 642) Illinois (18 Am.

[Norton v. Randolph]

Rep. 570; Kentucky, 21 Ky. L. Rep. 1835) Montana, (22 Montana 254) and Wisconsin (50 L. R. A. 305).

A. C. & H. R. Howze, for appellee. Independent of the motive, any use of one's property which injures his neighbor and interferes with the proper use and enjoyment of the property, is a nuisance.—*Grady v. Wolner*, 46 Ala. 381; *Ogletree v. McQuagg*, 67 Ala. 580; *English v. Motor Co.*, 95 Ala. 264; *Rich v. Daugherty*, 31 South. 934. That a spite fence cannot be maintained, see *Burke v. Smith*, 69 Mich. 383; *Barger v. Barringer*, 25 L. R. A. (N. S.) 831. The allegations of the bill were sufficient on these authorities, and the chancellor properly overruled demurrers.

SOMERVILLE, J.—The bill is filed by the appellee, Randolph, against the appellant, Mrs. Norton, seeking to abate an alleged nuisance erected by her on a vacant lot adjoining his residence property in the city of Birmingham. The averments of the bill are substantially as follows: Complainant is the owner of a lot on which he has erected for selling or renting a valuable dwelling house, costing about $6,000. This dwelling is in a desirable part of the city, and many other dwellings of like character have been erected on the same street. Respondent owns a vacant lot, immediately adjoining complainant's lot, "which is vacant and unimproved property and is not used by her for any purpose." She has nevertheless erected on said vacant lot, within three or four feet of complainant's house, "a large plank wall or structure about 20 feet high and 30 feet long, by means of which she has almost entirely excluded the air and light from the rooms on that side." This structure is alleged to be useless, and also unsafe, in that it endangers the adjoining dwelling by its liability to be blown over and thus cause damage thereto. It is fur-

ther alleged that this structure "does not serve any useful purpose, nor add any value to the property of the said Laura J. Norton"; and that complainant "does not know for what purpose said structure was erected by the said Laura J. Norton, unless it was for the purpose of vexing, annoying, and injuring" him, "by preventing him from using his property, either by sale or rent; and that it has prevented his selling or renting said property, and its selling or renting value has been greatly diminished thereby." Respondent demurred to the bill as a whole, and assigned the following grounds: "(1) For that there is no equity in said bill. (2) For that complainant has an adequate remedy at law for the matters and things complained of therein. (3) For that it does not sufficiently appear therefrom that the said wall or structure alleged to have been erected by defendant is a nuisance. (4) For that it is not sufficiently shown that the said wall or structure erected by defendant is dangerous, unsafe, or defective, or was not erected with proper and necessary skill and care, nor that same is unsafe in such way or measure as to constitute same a nuisance. (5) For that it does not sufficiently appear from the bill that defendant's erection of said wall or structure on her lot was not lawful nor in the exercise of her subsisting legal rights, nor that she has thereby interfered with complainant or his property, or his legal rights or privileges." The chancellor overruled the demurrer, and the appeal is from that decree.

The jurisdiction of equity to abate nuisances by injunction is too well settled to require discussion. The main question therefore involved in this case is whether the allegations of the bill, which are admitted to be true by the demurrer, establish such a nuisance as to justly invoke the intervention of a court of equity.

[Norton v. Randolph]

We think it clear that the averments of the bill are insufficient to show that the structure complained of is dangerous to the safety of complainant's premises in such sense as to constitute a nuisance, and the grounds of demurrer pointing out this defect should have been sustained had they been directed and limited to that aspect of the bill. But, being directed to the whole bill, they were properly overruled if the bill had equity in some other aspect.

We come then to the decisive questions raised by the fifth ground of demurrer: Is the structure described in the bill brought by appropriate averment within the class known in legal parlance as "spite fences"; that is, was it erected by respondent solely for the malicious purpose of vexing and injuring complainant in the lawful use and enjoyment of his dwelling house, and was it at the same time devoid of all benefit or value to respondent in the use or improvement of her property? And, if so, is it legally a nuisance?

It is of course true, as argued by appellant, that the old English doctrine of ancient lights is not, and never has been, in force in this state.—*Ward v. Neal,* 37 Ala. 500. And the general rule is well settled that the owner of land has no right as against adjoining owners to the unobstructed access of light and air to his premises over adjoining premises, unless such right has been acquired by grant express or implied.

Many of the cases dealing with the subject of malicious structures like the one here complained of are cited and reviewed in a case note to *Koblegard v. Hale,* 60 W. Va. 37, 53 S. E. 793, 116 Am. St. Rep. 868, 9 Ann. Cas. 732-734, and the great weight of authority, it must be conceded, is oposed to the equity of complainant's bill.—*Bordeaux v. Greene,* 22 Mont. 254, 56 Pac. 218, 74 Am. St. Rep. 600; *Metzger v. Hochrein,* 107 Wis.

267, 83 N. W. 308, 50 L. R. A. 305, 81 Am. St. Rep. 841; *Guethler v. Altman,* 26 Ind. App. 587, 60 N. E. 355, 84 Am. St. Rep. 313; *Fisher v. Feige,* 137 Cal. 39, 69 Pac. 618, 59 L. R. A. 333, 92 Am. St. Rep. 77.

The doctrine of these cases, based on the alleged right of the owner of land to use it according to his malicious fancy, and without any advantage to himself or his land, for the sole purpose of injuring his neighbor in the lawful and beneficial use of his adjoining property, has been carried to such an extent as in many cases to be justly characterized as "odious." And hence statutes have been passed in a number of states abrogating the principle on account of the unjust and injurious effects resulting from its enforcement.

The authority of precedents, however, must often yield to the force of reason, and to the paramount demands of justice as well as the decencies of civilized society, and the law ought to speak with a voice responsive to these demands.

We have examined the decisions and the reasoning of the various courts upon this question; and, unfettered by any precedents of our own, we are led to the deliberate conclusion that the majority view, as above stated, is founded upon a vicious fallacy, and is violative of sound legal principle as well as of common justice.

This conclusion has already found eloquent and forcible expression in decisions of the Supreme Courts of Michigan and North Carolina.—*Burke v. Smith,* 69 Mich. 380, 37 N. W. 838; *Flaherty v. Moran,* 81 Mich. 52, 45 N. W. 381, 8 L. R. A. 183, 21 Am. St. Rep. 510; *Kirkwood v. Finegan,* 95 Mich. 543, 55 N. W. 457; *Peek v. Roe,* 110 Mich. 52, 67 N. W. 1080; *Barger v. Barringer,* 151 N. C. 433, 66 S. E. 439, 25 L. R. A. (N. S.) 831, 19 Ann. Cas. 472. And, it may be added, its underlying reasons have been convincingly stated in

the decisions of several other states in the course of opinions dealing with and sustaining the constitutionality of statutes making certain malicious and nonuseful structures unlawful.—*Horan v. Byrnes*, 72 N. H. 93, 54 Atl. 945, 62 L. R. A. 602, 101 Am. St. Rep. 670; *Rideout v. Knox*, 148 Mass. 368, 19 N. E. 390, 2 L. R. A. 81, 12 Am. St. Rep. 560.

As said by PARSONS, C. J., in *Horan v. Byrnes, supra*: "The conclusion that a landowner's property right in real estate includes the right to use it solely for the injury and annoyance of his neighbor, without intending to subserve any useful purpose of his own, is based upon a narrow view of the effect of the land title, and is reached by the strict enforcement of a technical rule of ownership briefly expressed in an ancient maxim "Cujus est solum, ejus est usque ad cœlum.'    *    *    * Because when employed for a useful purpose such use may rightfully injure another, it does not follow that the same use for a wrongful purpose may also rightfully injure another, except upon the theory of absolute dominion, for the character of the use is an element of the right.    *    *    * As, therefore, the statute does not deprive the plaintiff of any right to a reasonable use of his land, but only prohibits an unnecessary, unreasonable use, it does not deprive him of any property right."

And as said by HOLMES, J., in *Rideout v. Knox, supra*: "But it is plain that the right to use one's property for the sole purpose of injuring others is not one of the immediate rights of ownership; it is not a right for the sake of which property is recognized by the law, but is only a more or less necessary incident of rights which are established for very different ends."

We approve the judicial reasoning as well as the Christian ethics of the Michigan court as expressed in the language of Morse, J., in *Burke v. Smith, supra*:

"If a man has no right to dig a hole upon his premises, not for any benefit to himself or his premises, but for the express purpose of destroying his neighbor's spring, why can he be permitted to shut out light and air from his neighbor's windows maliciously and with no profit or benefit to himself? By analogy, it seems to me that the same principle applies in both cases, and that the law will interpose and prevent the wanton injury in both cases. * * * It must be remembered that no man has a legal right to make a malicious use of his property, * * * for the avowed purpose of damaging his neighbor. To hold otherwise would be to make the law a convenient engine in cases like the present to injure and destroy the peace and comfort, and to damage the property of one's neighbor, for no other than a wicked purpose, which in itself is or ought to be unlawful. The right to do this cannot, in an enlightened country, exist either in the use of property or in any way or manner. * * * The right to breathe the air, and to enjoy the sunshine, is a natural one; and no man can pollute the atmosphere, or shut out the light of heaven, for no better reason than that the situation of his property is such that he is given the opportunity of so doing, and wishes to gratify his spite and malice toward his neighbor. * * * I do not think the common law permits a man to be deprived of water, air, or light for the mere gratification of malice."

We quote also the following language of Brown, J., in *Barger v. Barringer, supra,* adopted by the North Carolina court: "There are many annoyances arising from legitimate improvement and business which those living near must endure, but no one should be compelled to submit to a nuisance created and continued for no useful end, but solely to inflict upon him humiliation as well as physical pain. The ancient maxim of the com-

[Norton v. Randolph]

mon law, 'Sic utere tuo, alienum non lædas,' is not founded in any human statute, but in that sentiment expressed by Him who taught good will toward men, and said, 'Love thy neighbor as thyself.' Freely translated, it enjoins that every person in the use of his own property should avoid injury to his neighbor as much as possible. No one ought to have the legal right to make a malicious use of his property for no benefit to himself, but merely to injure his fellow man. * * * The doctrine of private nuisance is founded upon this humane and venerable maxim of the law. If it can be successfully invoked to prevent the keeping of stables and hogpens so near one's neighbor as to cause discomfort, why cannot he whom it is sought to needlessly and maliciously deprive of air and sunlight also seek the aegies of its protection? The right thus to injure one's neighbor with impunity cannot long continue to exist anywhere in an enlightened country where God is acknowledged and the Golden Rule is taught. On this subject, if need be, we will do better to follow the pandects of the heathen Romans, whose jurists have inculcated a doctrine more consistent with the teachings of Him whom they permitted to be crucified, than to be governed by the principles of the common law as expounded by some Christian courts and text-writers."

But little else remains to be said in support of the rule of reason and good morals. The rule of malice was, we think conceived in error, and has indeed become a caliban of the law—the ugly and misshapen offspring of a decent and honorable parentage—and we are unwilling to sanction in this jurisdiction its evil and odious sway. We therefore hold that there is equity in the bill of complaint.

As a matter of pleading, however, we think the averments of the bill are not sufficient to bring the case

clearly within the rule above enunciated. It should be distinctly alleged, not only that the structure complained of is entirely useless to the respondent, and without value to her property, but also that it was maliciously erected for the purpose of injuring complainant in the use and enjoyment of his property. It may be conceded that the facts stated in the bill are sufficient to justify the inference of malice as a matter of evidence merely, but they may conceivably be consistent also with its absence; and, on demurrer, the averments of fact must of course be strictly construed against the pleader in so far as opposing conclusions may be drawn. Nor does the averment that complainant "does not know for what purpose said structure was erected, * * * unless it was for the purpose of vexing, annoying, and injuring" him, meet the requirements of good pleading as to the assumption of the burden of proof by complainant in this regard.

The fifth ground of demurrer should therefore have been sustained, and to that extent the decree of the chancellor will be reversed and a decree here rendered to that effect.

Reversed and rendered. All the Justices concur.