## BENEDICT REMINGTON *v.* MARTIN MILLERD ET AL.

Construction of the statute of Rhode Island concerning highways.

To establish a highway by *dedication*, there must be not only an *intent* on the part of the owner of the land to devote it to the use of the public, but there must also be an *acceptance* on the part of the public ; and to establish such acceptance by *use*, that must be clearly proved.

Under the statute of Rhode Island concerning highways, the fact that a town council has declared a way to be an open highway, and has ordered it to be repaired at the expense of the town, is not evidence of an acceptance by the public, because the town council are not to be deemed the general agents of the public. In no case is such a declaration by a town council of any binding force, unless the way has been actually *used* as a highway for *twenty years*.

But, under the statute in question, if a town council adjudge a highway over certain land to be necessary for the public use, and thereupon proceed to appoint a committee to survey, bound, and mark out a highway over said land, and to establish it, the intent of the owner of the land to dedicate it for a highway would have been met by an *authorized act*.

THIS was an action of trespass, the facts and the pleadings in which are minutely set forth in the opinion of the Court, delivered by

BRAYTON, J. — This was an action of trespass brought by the plaintiff against the defendants, for breaking and entering the close of the plaintiff, situated in East Greenwich, and described in the declaration as " bounded easterly on a highway running through the compact part of said East Greenwich, northerly on land of Betsey Tanner, westerly on land of Dexter S. Remington, and southerly on land of Elisha Potter."

The defendants have put in their plea of justification, setting forth substantially, that previous to the 16th day of March, 1784, that part of the close described by the plaintiff, in which the supposed trespass was committed, was marked out on a plat deposited in the office of the clerk of the proprietors of said East Greenwich, as and for a highway ; that John Pierce, on the said 16th day of March, 1784, conveyed to Arnold Stafford a lot of land " numbered as by plat 21," and bounding it northerly on the highway, and on the 6th day of September following, conveyed to the said Stafford, " lot No. 20, bounding it also southerly on a street or highway ; the said Pierce being, at the time of said conveyance, seised in fee of said lot, and of the land within the limits of the street laid down on said plat; that afterwards, on the 17th day of April, 1787, one half of said lot No. 20 was conveyed by said Stafford to Joseph Shaw, bounding the said lot on a highway southerly ; that, on the 1st day of April, 1828, Mary Shaw and Lyndia Shaw conveyed to the plaintiff one half of said lot No. 20, and on the 14th of the same month, Alexander Havens conveyed to the plaintiff the other half of said lot No. 20, both said last-mentioned conveyances bounding the said lot southerly on a highway ; that, on the 21st day of March, 1787, said lot No. 21 was conveyed by Alexander Havens and Lyndia Shaw to Lawton Green, and in January, 1844, by said Lawton Green to Elisha and David Potter, both said conveyances bounding said lot on said highway northerly ; that, on the 2d day of May, 1799, the said John Pierce, being then seised in fee of the same, conveyed to Peter Turner the land lying west of said lots No. 20 and No. 21, and between them and said Pierce street, including a street or highway which runs west from the south end of said Stafford's dwelling-house, said Turner to hold and improve said street or highway, " so far as it adjoins said land ;" but

" whenever the court of probate of said East Greenwich should order said street opened for the benefit of the public," said Turner was required to remove his fence or wall and lay out said street as an open highway ; that said Peter Turner, on the 25th day of January, 1818, conveyed the same premises to James V. Turner ; and the same were, on the 27th day of March, 1821, conveyed by James V. Turner to George Austin ; by George Austin, on the 15th day of May, 1836, conveyed to Dexter S. Remington ; all said conveyances bounding said premises upon the said street or highway, and describing it as a cross street ; that Dexter S. Remington, on the 15th day of February, 1844, conveyed the land on the south side of said street to one Robert Taft, bounding it northerly on said street ; that the court of probate of said East Greenwich, on the 25th day of May, 1844, by their decree, ordered said street to be opened as a highway for public use ; and, on the 31st day of August following, the town council of said East Greenwich ordered the same to be an open highway, and ordered the same to be prepared at the expense of said town of East Greenwich ; and the said highway was annexed to the highway district of which Martin Millerd, one of the defendants, was surveyor ; that it was out of repair, and that the said Millerd, as such surveyor, and the other defendants, as his servants, entered upon the premises to repair the said way.

To this plea the plaintiff has demurred generally.

Under this state of the pleadings, the question is raised, whether the way delineated on the plat referred to was, at the time of the alleged trespass, a public highway which the town of East Greenwich was bound to repair.

The plaintiff rests his claim to recover upon his possession of the premises ; and whatever rights there may be in the owners of lots bounding thereon to have it kept open for their

use, and whatever rights of action they may have against the plaintiff for enclosing and thereby obstructing their private way, the surveyor, as such, can only be justified by the fact that it was a highway which the town of East Greenwich was bound to repair. Upon such way only has he any right to enter for the purpose of repair.

Was it then such a highway ? It is not pretended that this became a highway by virtue of being laid out by proprietors, and approved by them and recorded in their records ; it having been laid out, if at all, by an individual, and not by a propriety. Neither is it a highway laid out by the town council, pursuant to the statute empowering them to lay out highways, no one of the requisites of that statute having been complied with. There has been no decree of the town council declaring it to be a highway after twenty years' user as such, there having been in this case no user whatever.

It was urged, indeed, on the argument of the cause, that the conveyances by John Pierce, in effect, operated as a conveyance to the town of East Greenwich of the land in question, for the special purpose of being used and improved as a public highway within the ninth section of " An Act for laying out highways ; " the interest of the grantor being manifest, that the land should be used by the public as a highway. But we apprehend, that that section of the statute is only to be satisfied by vesting in the town the legal title, and not the mere use. Indeed, the use cannot vest in the town, that being designed for the general public. The town can only hold the land subject to the use by the public. But in this case the fee in a portion of the way has never been conveyed ; but still remains in John Pierce or his heirs, while the fee of the residue has passed by successive mesne conveyances to different individuals, and is now vested in one Dexter S. Remington. Neither the fee of the land nor the use has ever passed to the town.

Remington *v.* Millerd et al.

But the defendants seem mainly to rest their defence upon another point, and contend that, independently of any statute provision, this became a highway by dedication, as at common law; and have cited numerous cases to show that land may be dedicated to public use; and that whenever the owner of land expresses, clearly and unequivocally, an intent to devote it to the use of the public in any particular mode, a right is thereby vested in the public to use it in that mode, whatever that mode may be, whether as a public landing, square, burial-ground, or highway.

The cases cited to this point are 12 Wheat. 582, which was the dedication of a spring at Lexington; 2 Peters, 296, which was that of a burial-ground; 6 Peters, 431, of a public square at Cincinnati; 6 Peters, 498, of a landing-place at Pittsburg, and of quays at New Orleans, leave no doubt that, by the principles of the common law, lands may be dedicated to public uses; and the case in 2 Strange, 1004, renders it equally certain that, in England, highways may be so created. And this doctrine of dedication, as applied to highways, has been adopted in many of the states of this union; by so many at least as have deemed it adequate to their wants or applicable to their circumstances; and supposing it to have been received and adopted in this state, we must examine its extent.

Upon an examination of the cases which have been decided upon this subject, we find, what we should naturally expect, that the principles of the law of dedication are not so broad as the defendants claim them to be, and that something more is requisite to vest the right than the mere dedication by the owner; that there must be not only a clear intent on the part of the owner, to devote it to the use of the public, but there must also be an acceptance on the part of the public. And it is laid down in 2 Greenleaf's Evidence, that, to prove a highway by dedication, two things are essential; first, the

act of dedication, and, second, the acceptance of it on the part of the public.

It is necessary, then, that it should appear from the defendant's plea, first, that John Pierce, the owner of the land, has expressed a clear intent that the public should have the use of the land as a highway; and, second, that the public have accepted the use, or at least have assented thereto.

As to the first point, there would seem to be little doubt that John Pierce intended that, at some time, the public should have the use of this land for travel as a public open way, if they chose to accept such use. And it may be well here to notice that, in all his conduct in relation to this matter, he evidently acted upon a belief, on his part, that his offer to appropriate the land for a highway went for nothing, unless the offer was accepted by the public; for although he had, in 1784, indicated his intent that the public might travel there, and that immediately; yet having waited fifteen years without any act on the part of the public evincing a desire to accept his offer, he, in 1799, again resumed his dominion over the land by conveying the fee of a portion of it to Peter Turner, at the same time expressing his intent that it should be again enclosed, and the public excluded from the use, until the court of probate of East Greenwich should order it opened.

Supposing the dedication to be proved, is there in this case any evidence of an acceptance by the public, any assent on their part to the use of the land in the mode intended? The usual evidence of such acceptance, namely, an user by them, is here wanting. This way has never been used. In all the cases cited there had been a use by the public from which their assent might be inferred, and in many of them the use had been for so long a period as to warrant the presumption not only of their assent, but of the act of dedication

Remington *v.* Millerd et al.

also. It is not easy to perceive how otherwise than by user this assent is to be shown. The term public includes the whole community, the whole mass of individuals in the state. They cannot constitute agents to assent for them. The whole doctrine of dedication is based upon the fact that the public have no agents; that there is no one with whom the owner of the land can agree or contract directly; and it is therefore said that in these cases it is not necessary that the public should be a party, and that, from the necessity of the case, they cannot be.

Does the plea contain any other evidence of an acceptance on the part of the public? If so, it is the fact that the town council of East Greenwich, on the 31st day of August, 1844, declared the way to be an open highway, and ordered it to be repaired at the expense of said town. If this be evidence of such acceptance, it must be because the town council are to be deemed the general agent of the public, and for this purpose represent them, or because they are by statute specially empowered to accept the way in the mode set forth.

But are they such agent? Have they any such representative character? They are the creature of the statute, invested with certain defined powers. They are enabled to do such acts as the statute authorized, and to do them in the mode prescribed; and if they assume to do other acts, or to do them in other modes, their doings are merely void, and cannot become the more valid from any representative character which may be imputed to them. It is difficult to see how they are the agent of the public, more than the surveyor of highways.

If they are not the general agent of the public, were they authorized to declare the way in question to be a public highway? No statute confers such authority upon them. In no case is such declaration by the town council, of any

binding force, unless the way has been actually used as a highway for the period of twenty years. Under no circumstances, therefore, could such declaration affect this way.

And it may be well here to consider whether that section of the act for laying out highways was designed to enable the town council, by their decree, to make that a highway which, notwithstanding the use as a highway for twenty years, had not become legally such; or whether, on the other hand, it was designed to restrain the erection of highways by dedication. The decree of the town council that the way should be repaired at the expense of the town is, in reference to the facts of this case, equally unauthorized and invalid. The statute provides that, in one case, and one only, such decree shall charge the town with the repair of the highway, with which it was not before chargeable. But this is only where the legal title to the land is by deed vested in the town. Here is no such conveyance.

Had the town council adjudged a highway over the land to be necessary for the public use, and thereupon proceeded to appoint a committee to survey, bound, and mark out a highway there, and to establish it under the power conferred upon them by the section of " An Act for laying out highways," the intent of John Pierce to devote the land to the public use as a highway, would have been fully met by an authorized act, the land would have become precisely what he designed it should be. Having freely offered it to the public for a highway, and it now being converted to that use, conformably to his intent, by a power competent and fully authorized to that end, he would doubtless be precluded from claiming damages for the land, and perhaps to the same extent he would have been, had the public assumed the use of the land by travelling over it.

The town council, however, have never proceeded to exercise the power conferred upon them.

Notwithstanding the dedication of the land, therefore, as a highway, it does not appear that it was ever accepted by the public, or for them, as such way; nor does it appear that any act has been done by the town council or any other body in pursuance of any authority vested in them either to create or to perfect a highway.

The demurrer must therefore be sustained and judgment rendered for the plaintiff.    Damages to be assessed.