DECISION
This Court is asked, through various dispositive motions filed by the parties in this case, to interpret and apply the Rhode Island statute concerning "spite fences," R.I. Gen. Laws § 34-10-20, to determine the viability of a statutory claim for private nuisance filed by Plaintiffs Jack and Anne deRaismes against their neighbors, Defendants Bruce and Eleanor Ferguson. For the reasons set forth in this Decision, this Court first finds that the parties' properties are "adjoining" under the statute, as a matter of law, so as to give rise to a potential statutory action for private nuisance. As such, the Fergusons' motion for summary judgment as to that issue is denied, and the deRaismeses' cross-motion for partial summary judgment as to that issue is granted. This Court finds further, however, that the trees of which the deRaismeses complain are not "on or near" the parties' property line, as the statute requires, so as to bar their statutory action for private nuisance as a matter of law. Accordingly, as to that issue, the Fergusons' motion for summary judgment is granted. *Page 2 
 I FACTS AND TRAVEL[1]
The parties in this case are neighbors on a road called Waterway in a bucolic section of North Kingstown, Rhode Island that overlooks Narragansett Bay. Defendants, the Fergusons, own waterfront property that also fronts on Waterway. Plaintiffs, the deRaismeses, live across the street from the Fergusons on non-waterfront property, upland and uphill from the Fergusons' property, which also fronts on Waterway. This dispute erupted when the Fergusons, who are passionate about their landscape architecture, planted a row of trees along Waterway and elsewhere on their property that grew to block the deRaismeses' view of Narragansett Bay. Calling those trees a "spite fence" that creates a private nuisance, the deRaismeses filed this action to seek a court order for their removal under R.I. Gen. Laws § 34-10-20 (the "Rhode Island Spite Fence Statute").
Many years before this dispute arose, the lands comprising both the deRaismes and Ferguson properties, as well as parcels in the surrounding area, were held in common ownership. See Mem. of Law in Support of Pl.s' Obj. to Def.s' Mot. for Summ. J. on the Issue of the "Adjoining" Nature of the Parties' Properties and in Support of Pl.s' Cross-Mot. for Partial Summ. J. at 1-7; Exs. 1-17. (hereinafter "Pl.s' Mem. on `Adjoining' Issue"). A 1913 deed references "The Waterway," describing it as a "drift way or road thirty-three (33) feet in width," "subject, however, to all existing rights of way, or other rights, if any, in the said road of the owners of land abutting on the said road or any other persons."Id. at 3; Exs. 1-7. By the 1970's, the Langes owned all of the land currently *Page 3 
owned by the parties. Id. at 5; Exs. 1, 10-11. They later conveyed the eastern, waterfront portion of the property (now owned by the Fergusons) to Janet Anderson, including all "right, title and interest in and to said Waterway insofar as the same is adjacent to and coextensive with said parcel."Id. at 5-6; Exs. 1, 14. The Langes conveyed the parcel west of Waterway (now owned by the deRaismeses) to Katherine Aldrich.Id. at 6; Exs. 1, 15. This deed to Aldrich did not convey any interest in and to Waterway, but instead states that the property is bounded on the east by Waterway. Id. The 1974 plat map filed with the Town of North Kingstown depicts Waterway, with what is now the deRaismeses' property to the west of it. Id. at 6; Ex. 13.
The Fergusons later purchased the waterfront property east of Waterway that Anderson had owned (including Waterway) and built their home on it. Id. at 5-6; Exs. 1, 14, 16. In 2001, the owner of the undeveloped parcel of land west of Waterway marketed it for sale. See Pl.s' Mem. of Law in Support of their Obj. to Def.s' Mot. for Summ. J. on the Issue of Whether the Spite Fence Statute Requires a Fence to be Located "On or Near" a Property Line (hereinafter "Pl.s' Mem. on `On or Near' Issue"); Ex. A. The Fergusons, who owned and resided on the waterfront property across Waterway from this parcel, apparently considered buying the parcel either individually or in some form of neighborhood trust.Id. at 2; Ex. D. The deRaismeses outbid the Fergusons, however, and purchased the property in part because of what, at that time, was a clear ocean view of Narragansett Bay over the Fergusons' property. Id. at 2; Ex. C.
The deRaismeses began clearing their property in 2002 in order to build a home. Id. The following year, the Fergusons also did additional landscaping of their property which included the planting of a row of trees on their property along the edge of *Page 4 
Waterway and across from the deRaismeses' property.Id. at 2; Exs. C, E and G.[2] The trees grew, obstructing the deRaismeses' ocean view, prompting the deRaismeses to approach the Fergusons informally about trimming the trees so as to preserve their view. Id. at 2-3; Exs. C, E, F, G. The Fergusons were unreceptive to this request. Id. at 3; Exs. E, F. Within six years of their initial planting, these trees grew to a height of approximately forty feet, entirely blocking the view of the ocean that the deRaismeses had from their property. Id. at 3; Ex. G.
The deRaismeses allege that, in planting the trees, the Fergusons were motivated by spite, suggesting that the Fergusons planted the trees because they were outbid by the deRaismeses in attempting to purchase the deRaismeses' property. See id. at 4. In support of this allegation, the deRaismeses cite an alleged conversation between the parties during which Eleanor Ferguson suggested that if the deRaismeses wanted a water view, they should pay some of the Fergusons' property taxes. Seeid. at 3; Ex. F.
The deRaismeses filed this action in 2007, alleging causes of action for a private nuisance under Rhode Island's Spite Fence Statute, R.I. Gen. Laws § 34-10-20, and prima facie tort for intentional violation of an unspecified duty owed to plaintiffs.See Complaint, Counts I and II.[3] On September 15, 2008, a hearing justice of this Court heard the Fergusons' motion to dismiss the deRaismeses' action on the grounds that a private nuisance action could not lie because the parties' properties were not "adjoining" *Page 5 
as a matter of law as required by the Rhode Island Spite Fence Statute. The hearing justice treated that motion to dismiss as a motion for summary judgment and denied it, finding that the parties' properties were adjoining as a matter of law. (Order, Nov. 17, 2008 (Thompson, J.))[4]
As the hearing justice's decision about the adjoining nature of the parties' properties came in the form of an order denying the Fergusons' motion for summary judgment, the deRaismeses later filed a motion for partial summary judgment to attempt to use the order to obtain an affirmative judgment in their favor on the issue. At a hearing on June 3, 2009, the hearing justice granted the deRaismeses' motion for partial summary judgment, finding that "legally for purposes of the [Spite Fence Statute] they *Page 6 
are adjoining property owners." (Tr. at 21, June 3, 2009.)[5]
Following that hearing, both parties submitted proposed orders to the hearing justice for entry.[6] There is no record, however, that the hearing justice entered an order reflecting the granting of the deRaismeses' motion for partial summary judgment on the issue of "adjoining" properties.
On July 27, 2009, the Fergusons filed a motion for summary judgment on the grounds that the trees at issue were not "on or near" the property line between the parties' properties such that the trees could not be a spite fence, as a matter of law, under the Rhode Island Spite Fence Statute. The deRaismeses objected to that motion. While the docket sheet in the Court file indicates that the hearing justice denied that motion, no order to that effect appears in the Court file nor has this Court been provided with any record of the decision.
On October 6, 2009, the hearing justice, turned trial justice, presided over a jury trial of this case. On the fourth day of trial, the trial justice declared a mistrial. The proposed jury instructions filed by the parties and objections thereto indicate that a *Page 7 
dispute still existed between them at that time as to whether the Spite Fence Statute required the trees to be "on or near" the property line to give rise to liability for private nuisance and, if so, whether that issue was one for the Court or the jury, and, if for the jury, how the term "on or near" should be explained to the jury in the Court's charge. Given the mistrial, there is no evidence that the trial justice ever addressed these issues directly as a matter of record.
When this Court first conferenced the case in April 2010, it appeared, therefore, that two broad legal issues concerning the interpretation and application of the Rhode Island Spite Fence Statute still divided the parties ? namely, whether the parties' properties were "adjoining," as required by the statute, and whether the statute required the subject trees to be "on or near" the property line to give rise to a private nuisance action.[7] As the Court file failed to reflect the entry of orders memorializing the original hearing justice's rulings on these issues, as the trial justice did not further opine on these issues as a matter of record given the mistrial, and as this Court deemed it important to adjudicate the issues in advance of any potential retrial of the case, the parties agreed to frame these issues by filing renewed motions for summary judgment and partial summary judgment.[8]
On the issue of whether the parties' properties are "adjoining" for purposes of the Rhode Island Spite Fence Statute, the Fergusons filed a Motion for Summary Judgment. They argue that the Rhode Island Spite Fence Statute applies only to "adjoining" parcels *Page 8 
of land and that because Waterway (which the Fergusons contend is a public road) runs between the two properties, they cannot be adjoining as a matter of law, thereby making the Rhode Island Spite Fence Statute inapplicable.
The deRaismeses objected and filed a Cross-Motion for Partial Summary Judgment, arguing to the contrary that their property adjoins the Fergusons' property such that their private nuisance action under the Rhode Island Spite Fence Statute should go forward to trial. On the adjoining issue, the deRaismeses argue that the lots are physically abutting as a matter of law; that Waterway is not a public road; that even if Waterway is a public road, fee to the soil beneath the road remains adjoining; that even if the lots do not share a common boundary, physical touching is not required to be considered "adjoining"; and finally, that the Fergusons' arguments that Waterway is public are factually unsupported. The deRaismeses argue that the properties are "adjoining" as a matter of law for purposes of the Rhode Island Spite Fence Statute and seek partial summary judgment on that issue. Additionally, the deRaismeses argue that this issue was decided previously by a hearing justice of this Court so as to be binding on this Court under the "law of the case" doctrine.
On the issue of whether the alleged "spite fence" must be "on or near" the property line to be actionable as a private nuisance under the Rhode Island Spite Fence Statute, the Fergusons filed a second Motion for Summary Judgment. They argue that an action for private nuisance under the Rhode Island Spite Fence Statute requires proof that the alleged spite fence be "on or near" the property line between the parties' properties. They contend that the evidence, even if viewed in a light most favorable to the deRaismeses, shows that the trees in question were not planted "on or near" that *Page 9 
boundary line so as to entitle the Fergusons to judgment under the Rhode Island Spite Fence Statute as a matter of law.
On the "on or near" issue, the deRaismeses object to the Fergusons' Motion for Summary Judgment. They argue that the Rhode Island Spite Fence Statute does not require a fence to be on or near a boundary line to be subject to the statute, that cases from other jurisdictions reaching the contrary conclusion are no longer valid, that Rhode Island and California case law does not require that a fence be "on or near" the boundary line for a spite fence statute to apply, and that any determination as to whether the trees are "on or near" the boundary line is an issue of fact to be decided by the jury that precludes summary judgment. The parties agree that the original trial and hearing justice did not decide this issue; in fact, the issue remained thorny at trial, as evidenced by their respective requests for charge.
This Court has reviewed the parties' memoranda and entertained extensive oral argument on these issues. It also took a view during the summer of 2010 of the properties and trees at issue.[9] This Decision follows.
 II ANALYSIS
All issues currently before this Court revolve around the proper interpretation of the Rhode Island Spite Fence Statute, which provides as follows:
 A fence or other structure in the nature of a fence which unnecessarily exceeds six feet (6') in height and is maliciously erected or maintained for the purpose of annoying the owners or occupants of adjoining property, shall be deemed a private nuisance, and any owner or occupant who is injured, either in the comfort or enjoyment of his or her estate thereby, may have an action to recover damages for the injury. *Page 10 
R.I. Gen. Laws § 34-10-20 (1956).[10] Specifically, the parties dispute whether their properties are "adjoining" for purposes of the statute and whether the statute requires that the alleged spite fence be "on or near" the boundary line between the two properties to give rise to an action for private nuisance.
 A Whether the Parties' Properties are "Adjoining" for Purposes of the Rhode Island Spite Fence Statute
The question as to whether the properties owned by the deRaismeses and the Fergusons are adjoining for purposes of the Rhode Island Spite Fence Statute essentially turns on whether Waterway, which runs between the two properties, interrupts the boundary line between the two so as to make the properties not factually or legally adjoining. The parties disagree as to whether Waterway is public or private. As outlined below, however, under each of the possible characterizations of Waterway suggested by the parties, the outcome is the same. Thus, although the parties have a genuine factual dispute regarding the status of Waterway, this Court finds that dispute is not material to the determination of whether the properties are adjoining for purposes of the Rhode Island Spite Fence Statute, as neither party has provided evidence to support a factual scenario in which the presence of the road interrupts the boundary between the parties' properties in this case.
First, the Court notes that under the Rhode Island Supreme Court's holding in Bitting v. Gray, "[t]he determination of . . . the boundaries of land conveyed in a deed is a question of law."897 A.2d 25, 30 (R.I. 2006). Thus, it is for this Court to determine the *Page 11 
boundary line between the parties' properties in this case as a matter of law based on the evidence submitted.
The deRaismeses contend that, as a matter of fact and law, the two properties are adjoining. In support of their position, they rely on an affidavit of Attorney Marsella who reviewed the chains of title for both properties and concluded that "the deRaismes[es'] property and the Fergusons' property are adjoining as a matter of fact and law, because the Fergusons actually own fee title to the land up to and bordering on the eastern boundary of the deRaismeses' property." See Aff. of Stephen H. Marsella, Esq. at ¶ 4. The deRaismeses argue further that, even where a public road runs between two lots, there is a presumption that each abutting owner owns the soil beneath the road to the centerline of the road ? a presumption that is based on the concept that each of the adjacent landowners contributed land to the road in equal portions.See Bitting, 897 A.2d at 31; Newman v. Mayor ofNewport, 73 R.I. 385, 392, 57 A.2d 173, 177 (1948). InNewman, for example, the Rhode Island Supreme Court held as follows:
 In this state, in the absence of special circumstances . . . the owner of land abutting on a highway owns the fee to the middle line of the highway. As a general rule, by the legal establishment of a public highway, the public acquires only an easement in such highway, the fee in the soil remaining in the owners of adjoining lands.
57 A.2d at 177.
This presumption, however, may be overcome. If the evidence indicates that "a road is created wholly over the land of one person, the presumption of ownership to the centerline of a road is defeated and a conveyance of property bounded by such road conveys title only to the roadside." Bitting, 897 A.2d at 31. *Page 12 
Here, this Court is satisfied that the presumption that the parties each own the fee to the land beneath the road to the centerline of Waterway must give way. The undisputed evidence in this case shows that Waterway was created exclusively over the land belonging to the Fergusons. As such, the deRaismeses' property is bounded by the western edge of Waterway, as they claim, and they own no portion of the fee beneath that roadway.
The deRaismeses further contend that, even if the two properties do not literally touch one another, they should be considered adjoining for tort law purposes because they are separated by no property that is put to private use. To support the contention that the properties need not touch physically to be adjoining, the deRaismeses cite Homac Corporation v. Sun Oil Co., a New York case in which the court allowed plaintiff to recover damages after a fire crossed a 67-foot-wide road and caused harm to its property on the other side, even though the law limited recovery for fire damage to adjoining property owners. See137 Misc. 551, 553 (N.Y. Supp. 1930). The Court there reasoned that in tort law, the term "adjoining" and others like it, "are not intended to be used in their ordinary sense, namely, that the properties must actually touch each other," but rather concluded that properties are adjoining "when they are quite near to each other and are separated by no other property which can be put to a private use." See id.
The Fergusons argue, to the contrary, that Waterway is a public road separating the two properties, such that they are neither factually nor legally adjoining. Def.s' Mem. on "Adjoining" Issue at 1. In support of this contention, the Fergusons offer an affidavit of the North Kingstown Planning Director who reported that in March of 1974, when the deRaismeses' predecessors recorded their deed after the plat had been subdivided, the *Page 13 
Town required that all lots have access to a public street. Reiner Aff., ¶¶ 3-5. Thus, because Waterway is the only road onto which the deRaismeses' property fronts, and because the Town required public road frontage to approve a subdivision plan, the Fergusons contend that Waterway must have been a public road in March 1974. This Court also observes that on the plat map provided by the deRaismeses from the Town of North Kingstown, Waterway is not designated as a private road, and that other nearby roads such as Gould Way and Ferry Road, which the town does not consider to be private, similarly lack such a designation. See Pl.s' Mem. on "Adjoining" Issue at 26; Ex. 24.
Notwithstanding the presence of a road between the parties' properties, be it public or private, the properties still may be legally adjoining, however, if the fee interests owned by the parties which run beneath the road touch. If Waterway is not a public road, but rather a right of way or other easement, as the deRaimeses argue, the Fergusons would retain ownership of the soil beneath the road such that the lots are adjoining. Furthermore, as outlined below, if Waterway is a public road, the soil beneath it (and thus the parties' lots themselves) still would be adjoining, absent a clear demonstration that Waterway became public in some manner which disrupted the Fergusons' ownership of the fee beneath the road.
In North Kingstown, there appear to be four ways by which a public road may be created. First, the town may exercise its power of eminent domain to acquire land for use as a public highway, street, parkway, or drift way when it is determined that such an acquisition is in the public interest. See
R.I. Gen. Laws § 24-1-1 (1956). When a road is acquired through condemnation, however, the public functionally acquires an easement *Page 14 
over the land and ownership of the soil beneath the road remains with the original owner. See R.I. Hosp. Trust v.Hayden, 40 A. 421, 422 (R.I. 1898). Here, the parties have not produced evidence that the Town of North Kingstown acquired Waterway through an exercise of eminent domain, and even if it had, the original owner of the land (here the Fergusons) would have retained ownership of the soil beneath the road.
Second, a road may become public under the common law when "the owner of land expresses, clearly and unequivocally, an intent to devote it to the use of the public in any particular mode," and "acceptance of it on the part of the public." Remington v.Millerd, 1 R.I. 93, 97-98 (R.I. 1847). In such instances, an owner may convey its fee interest in property to a town by expressing the intent to do so, followed by acceptance by the town.See id. at 97. The Fergusons suggest that Waterwaymust be public because were it not, the deRaismeses' lot would not have been legal for residential purposes under the North Kingstown subdivision regulations and zoning ordinance. They have not shown, however, that they or any previous owners of the land over which Waterway runs ever expressed an unequivocal intent to transfer ownership of the land beneath the road in fee to the Town nor an acceptance of such transfer of land by the Town. Thus, even accepting that Waterway became a public road at some point around the time of recordation of the 1974 subdivision plat that created the deRaismeses' parcel, the Fergusons have not demonstrated that the Town acquired fee title to the road in this way. As such, the evidence adduced suggests that the Fergusons continue to retain ownership of the soil beneath the road.
Third, although placing a street on an official map does not establish that street as public, "in the town of North Kingstown, regularly performed maintenance by the town, *Page 15 
upon any paved mapped street of at least forty feet (40') in width, for a period of not less than twenty (20) years, constitutes the opening or establishment of a street as a public way." R.I. Gen. Laws § 45-23.1-1.1 (1956). The only record evidence presented by the parties, however, suggests that Waterway is only thirty-three feet in width such that it could not become a public road through operation of law under this statute.See Pl.s' Mem. on "Adjoining" Issue; Exs. 14, 7 and 11 (inclusive of documents in parties' chains of title and maps).
Finally, Rhode Island law provides for the creation of public highways through use when a road has been "quietly, peaceably, and actually used and improved and considered as [a] public highway [] for the space of twenty (20) years, and which shall be declared by the town council of the town wherein [it] lie[s] to be [a] public highway []." R.I. Gen. Laws § 24-2-1. Although the evidence suggests that Waterway may have been used by the public for at least twenty years, the Fergusons have not demonstrated that the Town Council of the Town of North Kingstown ever declared it to be a public road. See Def.s' Mem. on "Adjoining" Issue at 3-6. Furthermore, under the holdings inNewman and Bitting, even if Waterway had been established as a public road under §§ 45-23.1-1.1 or 24-2-1, the Fergusons, as the owners of the land over which Waterway runs, would retain ownership of the soil beneath the roadway up to the deRaismeses' property line such that the parties' properties remain adjoining. See Bitting, 897 A.2d at 31;Newman, 73 R.I. at 392, 57 A.2d at 177.
Thus, although there may be some situations in which the presence of a public road between two properties disrupts the boundary line between them such that they are not adjoining, here the parties have not presented any evidence to that effect. While the *Page 16 
Fergusons contend that Waterway is public, they have not demonstrated that it became public in such a way that would disrupt their fee interest in the land beneath the road that borders the deRaismeses' property. This Court finds, therefore, that the parties' properties are adjoining as a matter of law. Accordingly, this aspect of the deRaismeses' Motion for Partial Summary Judgment is granted, and this aspect of the Fergusons' Motion for Summary Judgment is denied.[11]
 B. Whether the Rhode Island Spite Fence StatuteRequires that a Spite Fence be "On or Near" the Property Line
As noted previously, a statutory nuisance action predicated on the erection of a spite fence is governed by the Rhode Island Spite Fence Statute, which provides, in pertinent part, as follows:
 A fence or other structure in the nature of a fence which unnecessarily exceeds six feet (6') in height and is maliciously erected or maintained for the purpose of annoying the owners or occupants of adjoining property, shall be deemed a private nuisance. . . .
§ 34-10-20. The Rhode Island Supreme Court has held that "[i]n this state a fence erected on one's land for the purpose of shutting off light and air to an adjacent owner is not unlawful unless it violates [what is now section 34-10-20]," and that "[u]nder the common law[,] as it generally applie[s] in America[,] an adjacent proprietor has no right to light and air coming to him across the land of his neighbor." See Musumeci v. Leonardo,77 R.I. 255, 259-60, 75 A.2d 175, 177 (R.I. 1950).[12] Thus, the only remedy *Page 17 
available to landowners in Rhode Island for fences allegedly erected by their neighbors out of spite is a private nuisance action brought under § 34-10-20.
The Fergusons argue that when read within the context of Rhode Island's other fence statutes, the Rhode Island Spite Fence Statute requires that the alleged spite fence be "on or near" the boundary line between two parcels to qualify as a private nuisance.See id. at 1-2. The Fergusons further contend that the Rhode Island Supreme Court's holding in Dowdell v.Bloomquist, 847 A.2d 827 (R.I. 2004), implicitly restricts spite fences to those fences that run along the property line, and they cite to several cases from other jurisdictions for the same proposition. See id. at 3-4. Arguing that the trees of which the deRaismeses complain are not "on or near" the boundary line between the parties' properties, the Fergusons claim that the DeRaismeses' nuisance action under the Rhode Island Spite Fence Statute must fail as a matter of law. As the deRaismeses have not asserted a cause of action for private nuisance under the common law, nor would they prevail as to such action based on a claim that the Fergusons blocked their view, the Fergusons argue that they are entitled to summary judgment with respect to the deRaismeses' claim of private nuisance.
The deRaismeses counter that the plain language of the Rhode Island Spite Fence Statute does not require that the offending fence or fence-like structure be "on or near" a property line and that "`[w]hen the language of a statute is clear and unambiguous, this *Page 18 
Court must interpret the statute literally and must give the words of the statute their plain and ordinary meaning.'" See Pl.s' Mem. on "On or Near" Issue at 5 (quoting State v. Robinson,972 A.2d 150, 158 (R.I. 2009)). The deRaismeses also note that fences may be erected for a variety of reasons (i.e., to enclose pools or animal areas) and that partitioning two properties is not the sole purpose of all fences. See id. They assert that because several other Rhode Island fence statutes apply to "partition fences" specifically, but the Rhode Island Spite Fence Statute does not contain such language, this omission by the General Assembly must have been intentional such that the Rhode Island Spite Fence Statute should be read as applying to all types of fences and not only partition fences. See id.
The deRaismeses next argue that because the Rhode Island Spite Fence Statute is a remedial statute enacted to rectify a deficiency in the common law, it should be construed liberally; construing § 34-10-20 to preclude its application here "would do no justice to the spirit and goal" of the statute. Seeid. at 7. In addition, they contend that the cases cited by the Fergusons to support the proposition that a fence must be "on or near" a property line to fall within the Rhode Island Spite Fence Statute are distinguishable, as they are based on an outdated conception of takings law or otherwise have been misinterpreted by the Fergusons. See id. at 7-13. Finally, the deRaismeses argue that, even if the Rhode Island Spite Fence Statute can be read as requiring the fence at issue to be "on or near" the boundary line of the parties' properties, the question of whether the Fergusons' fence (i.e., their row of trees) is "on or near" the property line between the deRaismeses' and Fergusons' properties raises a factual question (requiring *Page 19 
consideration, for example, of the location of the trees vis-à-vis the property line in relation to the overall size and configuration of the lots) that should be left to the jury.
The Rhode Island legislature enacted the original version of the Rhode Island Spite Fence Statute in 1896, but the Rhode Island Supreme Court did not have the opportunity to consider its application until 1950. See Musumeci, 75 A.2d at 175. InMusumeci, the Supreme Court held that a five and one-half foot fence erected atop a retaining wall, which blocked light and air flow into the neighboring homeowner's windows, was not a spite fence under the statute because the fence did not itself exceed six feet in height, and the fence and retaining wall together did not constitute a `"structure in the nature of a fence.'"Id. at 176 (citation omitted). The Supreme Court went on to explain that because there is no common law right to light and air coming across the land of a neighbor, the only mechanism for recovery available to those whose air or light is blocked by a maliciously erected fence is under the statute. Seeid. at 177. Thus, the Supreme Court recognized that the goal of the Rhode Island Spite Fence Statute is to provide a cause of action for a malicious blockage of light or air [or, arguably, view] by a spite fence ? actions that were previously unavailable at common law ? such that the statute is in derogation of the common law. See id.
In Dowdell v. Bloomquist, the Rhode Island Supreme Court held that, for purposes of the Rhode Island Spite Fence Statute, a densely planted row of western arborvitae trees[13] planted near the property line between two neighbors falls within the statutory description of a "structure in the nature of a fence;" it noted that "it is specifically because of their towering presence, as well as their relative positioning on *Page 20 
defendant's land, that we can consider the trees nothing less than a fence." 847 A.2d 827, 829-31 (R.I. 2004). Additionally, the Court inDowdell cited favorably to a California spite fence case in which the Court there held, under a spite fence statute that is virtually identical to the Rhode Island Spite Fence Statute, [14]
that ```a "fence or other structure in the nature of a fence" . . . need only be built to separate or mark the boundary betweenadjoining parcels — albeit, in an unnecessarily high and annoying manner.''' See id. at 831 (quoting Wilson v.Handley, 97 Cal. App. 4th 1301, 1309 (Cal. App.Ct. 2002) (citing Cal. Civ. Code § 841.4) (emphasis added). The Rhode Island Supreme Court specifically noted in Dowdell that it agreed with the lower court's grant of injunctive relief insofar as it was limited to "plantings along the property lines and in the nature of a fence." See id. at 829 n. 7. Thus, although the Supreme Court did not address directly whether a fence or fence-like structure must be "on or near" the property line to fall within the Rhode Island Spite Fence Statute, a close reading of its decision inDowdell suggests that it implicitly recognized such a requirement.
Other jurisdictions have limited application of their spite fence statutes to those fences located "on or near" the property line. Notably, the Massachusetts Supreme Judicial Court has interpreted the Massachusetts spite fence statute, which is and has been identical to the Rhode Island Spite Fence Statute since both states adopted their spite *Page 21 
fence statutes in the latter part of the 19th
century, [15] to be limited to fences that are "on or near" the boundary line between two properties. See Bostrom v.Lauppe, 60 N.E. 785, 786 (Mass. 1901); Spaulding v.Smith, 39 N.E. 189, 190 (Mass. 1895); Rideout v. Knox,19 N.E. 390, 392 (Mass. 1889). In the first case in a line of three spite fence cases filed in the years following the 1887 enactment of the Massachusetts spite fence statute, the Massachusetts Supreme Judicial Court opined that, given the common law tradition that permitted landowners to erect fences that restricted the flow of light and air onto neighboring properties and the then-held views on the constitutionality of land-use restrictions, "[i]t is at least very doubtful whether the act applies to fences not substantially adjoining the injured party's land." SeeRideout, 19 N.E. at 392 (citing Mass. Gen. Laws ch. 49, § 21).
Several years later, in a second spite fence case that is on all fours with the case at bar, the Massachusetts high court held that when the defendant had erected a fence at least twenty-one feet from the boundary line with the plaintiff's property and across a public highway (the soil beneath which was owned by the defendant), the fence was not a boundary fence and thus, as a matter of law, the Massachusetts spite fence statute did not apply. SeeSpaulding, 39 N.E. at 189 (citing Mass. Gen. Laws ch. 49, § 21). The Court there reasoned that "[t]o hold the fence of which the plaintiff complains to be within the meaning of the statute would, we think, be a greater limitation of the rights of owners than the legislature intended to impose."See id. at 190. *Page 22 
In deciding the third case in this line of spite fence cases, the Massachusetts Supreme Judicial Court acknowledged that while the term "fence" in the statute did not refer exclusively to "division fence[s]," "considering the statute in light of the extent and purpose which the legislature had in mind," it "does not apply to a fence which is not on or near the division line."See Bostrom,60 N.E. at 786 (citing Mass. Gen. Laws ch. 49, § 21) (emphasis added). Thus, in finding the absence of liability under the spite fence statute as a matter of law, it relied only in part on since-expanded takings law and based its narrow construction of the statute on the legislature's apparent intent to create a cause of action in derogation of the common law.
Additionally, as the operative language of the Massachusetts spite fence statute has not been altered in the intervening years, these three cases remain valid law, particularly insofar as they construe the statute narrowly because it is in derogation of the common law.See Rideout, 19 N.E. at 392 (citing Mass. Gen. Laws ch. 49, § 21).[16] The Rhode Island Supreme Court, too, has opined that "[w]hen interpreting a statute in derogation of common law, the statute must be strictly construed." See In re John,605 A.2d 486, 488 (R.I. 1992). Rhode Island has followed the same common law tradition as Massachusetts, and to the extent that the spite fence statutes in the two states are substantially identical, the statutory construction of the Massachusetts spite fence statute by the Massachusetts Supreme Judicial Court is extremely persuasive. *Page 23 
Moreover, much more recently, a California court interpreted the California spite fence statute to apply to "a row of trees planted on or near the boundary line between adjoining parcels of land." Wilson, 97 Cal. App. 4th at 1309 (emphasis added). In reaching this conclusion, the Court explored the legislative purpose of spite fence statutes in various jurisdictions, concluding that they were enacted "to prevent what would otherwise be the lawful practice of a landowner erecting or maintaining an unnecessarily high barrier between his or her property and anadjoining property to annoy the neighboring landowner."See id. (emphasis added). This conclusion that spite fence statutes were designed to provide a remedy for maliciously erected "barrier[s] between . . . adjoining propert[ies]" militates in favor of an interpretation of Rhode Island's Spite Fence Statute to include only those fences that are erected "on or near" a boundary line.
Finally, in one jurisdiction where the common law, unlike Rhode Island, recognized a private nuisance action for the erection of a spite fence, the Court predicated the cause of action on the fact that the fence at issue maliciously and unnecessarily blocked the flow of light and air into a neighbor's windows. SeeBurke v. Smith, 37 N.W. 838, 838 (Mich. 1888). As the free flow of air and light would not have been affected were the spite fence not erected "on or near" the boundary line between the neighbors, that case supports the proposition that a private nuisance action connected with the erection of a spite fence, even if recognized by the common law, is restricted to a fence that is erected "on or near" the parties' boundary line.
Thus, it appears to this Court that a private nuisance action brought against a neighbor for the erection of a spite fence is limited under both the common law and spite *Page 24 
fence statutes similar to the Rhode Island Spite Fence Statute to situations where the alleged spite fence has been erected "on or near" the boundary line between two properties. In particular, this Court recognizes that the Massachusetts Supreme Judicial Court has read the Massachusetts spite fence statute, which is substantially similar to the Rhode Island Spite Fence Statute, to capture only those fences that are "on or near" the property line. Although, inDowdell, the Rhode Island Supreme Court did not explicitly limit application of the Rhode Island Spite Fence Statute to fences that are "on or near" the property line, the Court did indicate approval of the trial court's injunction, which applied only to the fence-like row of trees planted along the property line.
Similarly, it seems to this Court that, although the Rhode Island General Assembly did not expressly limit the Rhode Island Spite Fence Statute to fences that are "on or near" the property line, it is unlikely that, in abrogating the common law, the legislature intended to create a cause of action, as plaintiffs contend, that would allow one neighbor to file a nuisance action against an adjoining property owner for a row of trees, hedge, or other fence-like structure erected on the interior of the parcel, potentially hundreds of yards from any boundary line between neighbors. Expansion of the Rhode Island Spite Fence Statute to broaden the definition of "fence" to include structures that are not "on or near" the property line should be effectuated, if at all, through legislative amendment of § 34-10-20, rather than by judicial fiat.
Additionally, this Court finds that the legislature's use of the word "adjoining" in the Rhode Island Spite Fence Statute is relevant to its consideration of the "on or near" issue as well. The statute makes actionable "[a] fence or structure in the nature of a fence which . . . is maliciously erected or maintained for the purpose of annoying the *Page 25 
owners or occupants of adjoining property." See
R.I. Gen. Laws § 34-10-20 (emphasis added). Because the legislature employed the term "adjoining" within the description of what constitutes a spite fence, it not only limited the cause of action to immediate neighbors, but it also implicitly implicated only those fences that are on or near the property line. This Court thus finds that the use of the term "adjoining" in that context indicates that the Rhode Island Spite Fence Statute should be read to apply only to fences erected "on or near" an adjoining property owner's property line and not to fences erected more on the interior of the property.
This conclusion is bolstered by the common and ordinary meaning of "fence" as "a barrier," Webster's Third New International Dictionary 837 (1969), or "a hedge, structure or partition, erected for the purpose of enclosing a piece of land . . . or to separate two contiguous estates." Black's Law Dictionary 745 (4th ed. 1968).[17] The term "fence" is not defined within the Rhode Island Spite Fence Statute, and the preceding sections of the statute on fences offer little assistance as they refer to "lawful fences" at some points, "partition fences" at other points, and "water fences" elsewhere, but do not indicate which, if any, of these definitions is applicable within the context of § 34-10-20. See
R.I. Gen. Laws §§ 34-10-1 to-20. The Rhode Island Supreme Court has held that when "following the rules of statutory construction," "[i]n the absence of *Page 26 
definition, the words of a statute will be given their usual meaning." See Carlson v. McLyman,77 R.I. 177, 180, 74 A.2d 853, 855 (1950). While fences may be erected for purposes other than denoting boundary lines, as the deRaimseses point out, this Court finds that the plain meaning most commonly attributed to the word "fence" is a partition between two properties.
Accordingly, this Court holds that the Rhode Island Spite Fence Statute, R.I. Gen. Laws § 34-10-20, must be construed narrowly because it is in derogation of the common law. So construed, it applies only to fences that are erected "on or near" a boundary line between adjoining parcels of land. If the legislature sees fit to broaden this cause of action beyond those fences erected on or near a property line, it is free to do so, but such an expansion is not the prerogative of this Court in interpreting a statute in derogation of the common law.
 C. Applying the Rhode Island Spite Fence Statute to the Case at Bar
The Fergusons urge this Court to find, as a matter of law, that the row of trees in question here are not "on or near" the property line as required by the Rhode Island Spite Fence Statute.[18] The Fergusons rely upon two Massachusetts cases in which the Supreme Judicial Court rejected spite fence actions on the basis that the fence in question was too far from the boundary line to fall within the statute. See Bostrom, 60 N.E. 785 *Page 27 
(fence that is between nine and one-half feet and eleven feet from the boundary line is not actionable as a private nuisance under the Massachusetts spite fence statute); Spaulding, 39 N.E. 189 (rejecting statutory private nuisance action with respect to alleged spite fence that was at least twenty-one feet from property line).
In response, the deRaismeses argue that whether the Fergusons' trees are "on or near" the boundary line is an issue of fact most appropriately left to the jury. They also point out that inWilson, the Court held that a row of trees, the majority of which were further than ten feet from the property line, constituted a spite fence under the California spite fence statute.See 119 Cal. Rptr. 2d at 265.
While neither party has submitted evidence of the precise distance of the disputed row of trees from the property line between the parties' properties, they agree, as attested to by the deRaismeses' real estate and title expert, that "the documents in [their respective] chains of title as well as the maps of record show Waterway as thirty-three (33) feet in width." Marcello Aff. at ¶ 5(c). It is the deRaismeses' position, as advanced by them successfully in support of their argument that the parties' properties are "adjoining" and as attested to by their expert based on the title documents, maps and his research regarding the status of Waterway, that "the Fergusons obtained an ownership interest in the land that makes up Waterway . . . adjacent to their property; that no action has divested them of their interest in th[at] land . . .; that the deRaismeses' property borders Waterway where it runs adjacent to the Fergusons' property; and that the Fergusons' property includes the land that makes up Waterway where it runs adjacent to their property and therefore, the western boundary of the Fergusons' property abuts the eastern boundary of the deRaismeses' property. . . ." Marcello Aff. at ¶ 6(b) — (e). *Page 28 
Based on the record title evidence presented by the deRaismeses, therefore, the parties' property line is on the western edge of Waterway and the Fergusons' trees are at least thirty-three feet from that boundary line. The deRaismeses acknowledged in oral argument that the boundary line between the parties' properties could be to the west of the western edge of Waterway, which would increase the distance between the row of trees in question and the property line. Moreover, regardless of the actual width of Waterway and the exact location of the boundary line, the trees are along one side of the roadway, and the adjoining property line is on the other side of the roadway. As such, the road functionally divides the two properties (even though the soil beneath the road, being owned by the Fergusons, makes the two properties adjoining.). Whether Waterway is public or private, cars and pedestrians travel between the two properties regularly, functionally disrupting the boundary line between the two properties. The trees thus do not form a boundary between the two properties nor do they attempt to demarcate or approximate that boundary; if anything, the trees functionally divide the Fergusons' property from the roadway. Additionally, this case is factually distinguishable from Wilson; there, although the majority of trees were more than ten feet from the boundary line, some of them were within five feet of the boundary line, an important aesthetic and conceptual distinction from the case at bar where a wide swath for travel runs between the boundary line and the alleged spite fence. See id.
Thus, it cannot be disputed that the trees at issue are not "on" the property line between the parties' properties. In addition, the evidence, even when viewed in a light most favorable to the deRaismeses, establishes that the trees are not "near" the boundary *Page 29 
line.[19] As no reasonable jury, on the state of this evidence, could find to the contrary, this Court reaches this conclusion as a matter of law. See Anderson v. Liberty Lobby, Inc. .,477 U.S. 242, 250-51 (1986); Dragon v. St. of R.I., Dep't.of M.H.R.H., 936 F.2d 32 (1st Cir. 1991).[20]
This conclusion is supported by two Massachusetts spite fence cases. In Spaulding, a case remarkably similar to the case at bar, the defendant who owned the soil beneath a road that ran between his property and the plaintiff's property erected a fence on his side of the road at least twenty-one feet from the plaintiff's boundary line. 39 N.E. 189. The Court held, as a matter of law, that the fence in that case did not fall within the meaning of the statute because it was too far from the boundary line. 39 N.E. at 190. In a later case, the Massachusetts Supreme Judicial Court similarly held that a fence that was between nine and one-half and eleven feet from the boundary line could not qualify as a private nuisance under the Massachusetts spite fence statute.Bostrom,60 N.E. at 786 (citing Mass. Gen. Laws ch. 49, § 21).[21]
Accordingly, this Court holds as a matter of law that the Rhode Island Spite Fence Statute requires that the spite fence in question be "on or near" the boundary line to be actionable as a private nuisance. This Court also holds, in the case at bar, that the distance between the boundary line and the row of trees at issue and the existence of a *Page 30 
well-traveled road between the two precludes a finding that the trees are "on or near" the property line as a matter of law. As such, the Fergusons' motion for summary judgment as to the deRaismeses' complaint for private nuisance is granted.[22]
 CONCLUSION
For the reasons stated in this Decision, this Court finds that the parties' properties are "adjoining" as a matter of law under the Rhode Island Spite Fence Statute, R.I. Gen. Laws § 34-10-20. Accordingly, Plaintiffs' Motion for Partial Summary Judgment on that issue is granted, and Defendants' Cross-Motion for Summary Judgment on that issue is denied. This Court finds further, as a matter of law, that the alleged spite fence must be and is not located "on or near" the boundary line between the parties' properties. Accordingly, Defendants' Motion for Summary Judgment seeking to bar Plaintiffs' action for private nuisance under the Rhode Island Spite Fence Statute, R.I. Gen. Laws § 34-10-20, is granted.
Counsel shall confer and prepare forthwith for entry by this Court an agreed upon form of Order and Judgment that is consistent with this Decision.
[1] These facts, which are largely undisputed for purposes of the pending motions, are culled mostly from the Plaintiffs' memoranda, the affidavit of their real estate and title expert and the other exhibits attached to their memoranda.
[2] The Fergusons identify three distinct areas of trees about which the deRaismeses complain: Area 2, which includes the row of trees along Waterway opposite the deRaismeses' property; Area 3, which includes trees that are planted essentially perpendicular to the property line; and Area 12, which includes a single tree. See Def.'s' Mem. in Support of Mot. for Summ. J. at 2-3, 6 (hereinafter "Def.s' Mem. on `On or Near' Issue").
[3] While the Complaint does not plead a statutory cause of action for private nuisance under R.I. Gen. Laws § 34-10-20, but makes reference only to a cause of action for private nuisance generally and to a cause of action for prima facie tort, the deRaismeses clarified at oral argument before this Court that their claim for private nuisance is statutory only.
[4] The Order stated as follows:
 1.) That Defendants' Motion to Dismiss be treated as a Motion for Summary Judgment pursuant to Super. R. Civ. P. 12(b) and as such, is hereby DENIED. In doing so, the Court finds no genuine issue of material fact that:
 a. The Defendants in fact own fee title to the roadway between the two properties;
 b. While that roadway has been maintained by the Town of North Kingstown, it is not a public street or road; and
 c. Even if the roadway was public or the Defendants did not own the roadway, the properties are adjoining for purposes of R.I. Gen. Laws § 34-10-20, because the words abutting, adjoining and contiguous in tort cases are not intended to be used in the ordinary sense, namely that the properties must actually touch each other.
 2.) As a matter of law, the words "abutting," "adjoining" and "contiguous" in tort cases such as this case, should be construed to mean that properties "abut" and "adjoin" or are "contiguous" to each other when they are quite near to each other and are separated by no other property which can be put to a private use, like a public street or a public alley. Homac Corp. v. Sun Oil Co., 137 Misc. 551, 553 (N.Y. Supp. 1930).
 3.) Accordingly, as a matter of law, the properties of the Plaintiffs and Defendants at issue are in fact adjoining, and Defendants' Motion for Summary Judgment is DENIED.
(Order, Nov. 17, 2008 (Thompson, J.))
[5] In reaching that conclusion, the Court stated:
 Clearly any presumption, clearly the legal presumption, is that both abutting property owners contributed to the roadway. It has been rebutted in this case by review of the chain of title so that the contributing entity is clearly the defendants. They continue to own the fee beneath Waterway and that fee interest in that property touches the plaintiff's property. They are not only legally adjoined, they're physically adjoined legally. And for purposes of the statute, once again the word adjoining is subject to a plain and ordinary dictionary meaning, which is, they do in fact touch. Legally they touch and the Court, therefore, finds that legally for purposes of the spite fence law they are adjoining property owners so the motion for partial summary judgment is therefore granted.
(Tr. at 21, June 3, 2009.)
[6] (See Exs. 5 and 6 to Letter to Court, June 9, 2010.) This letter also enclosed copies of various pleadings that the parties agree were filed with the Court but that they claim could not be located in the original Court file. Counsel are cautioned that letters to the Court are not pleadings and hence are not part of the record in the case. This Court notes this letter only to clarify the extent of the official record.
[7] Subsidiary issues to the "on or near" question also divided the parties; even assuming that the Rhode Island Spite Fence Statute required the trees to be "on or near" the property line to be actionable, they disputed whether the question of whether the trees in dispute were "on or near" the property line was a question for the Court or the jury and under what standard.
[8] As the original hearing and trial justice in this matter was elevated to the United States Court of Appeals for the First Circuit on April 1, 2010, there was no vehicle by which to memorialize her earlier rulings in court orders or have any remaining issues decided by her in advance of further hearing or trial.
[9] Consistent with the evidence, the view revealed an unimproved road that bisects a lovely neighborhood where very large trees line much of the roadway.
[10] This statute, entitled "Spite fences," though originally enacted in 1896 and re-enacted in subsequent years, has not changed in any material respect since its adoption. See
G.L. 1896, ch. 126, § 16, as enacted by P.L. 1909, ch. 416, § 1; G.L. 1923 ch. 182, § 20; G.L. 1938, ch. 645, § 20; G.L. 1956, § 34-10-20.
[11] As the original hearing and trial justice apparently reached the same conclusion at an earlier stage of these proceedings (although she never entered an order to that effect as to the deRaismeses' motion for partial summary), it is unnecessary to reach the deRaismeses' argument that their motion should be granted here based on the doctrine of law of the case. It also is unnecessary, given this Court's ruling, to address whether the Homac
definition of "adjoining," discussed supra, applies here.
[12] Although the Court in Musumeci did not specifically address obstruction of view, courts in other jurisdictions have held consistently that landowners have no common law right to light, air, or view across a neighbor's property and that any such right must be provided by statute. See Giller v. West,69 N.E. 548, 549 (Ind. 1904) ("The [plaintiff] had no easement of light, air or view in or over the [defendant's] lots, and she had no legal cause for complaint if these were interfered with or entirely shut off by the erection of a fence, house or other building.") (emphasis added); Levy v. Brothers,23 N.Y.S. 825, 4 Misc. 48, 50 (N.Y. Sup. Ct. 1983) (A man "should not rely upon the generosity of his neighbor, and must depend upon himself by reserving space enough on his own land for all his requirements, light, air and vision
included.") (emphasis added); Stroup v. Rauschelbach,261 S.W. 346, 347 (Mo. Ct. App. 1924) ("No action can be maintained by one property owner against another for cutting off hisview, unless a statute confers such right.") (emphasis in the original).
[13] Among the trees about which the deRaismeses complain are at least eight western arborvitae trees. See
Pl.s' Ex. G attached to Pl.s' Mem. on "On or Near" Issue.
[14] The California spite fence statute at issue inWilson differs from the Rhode Island Spite Fence Statute only with respect to its height requirement. It provides, in pertinent part, as follows:
 Any fence or other structure in the nature of a fence unnecessarily exceeding ten feet in height maliciously erected or maintained for the purpose of annoying the owner or occupant of adjoining property is a private nuisance.
Cal. Civ. Code § 841.4 (1913) (as amended).
[15] Compare
Mass. Gen. Laws ch. 49, § 21 (2010) with
R.I. Gen. Laws § 34-10-20. The Massachusetts spite fence statute, as enacted in 1887 and as exists today (with only minor grammatical alterations) provides, in pertinent part, as follows:
 Any fence or other structure in the nature of a fence, unnecessarily exceeding six feet in height, maliciously erected or maintained for the purpose of annoying the owners or occupants of adjoining property, shall be deemed a private nuisance.
[16] Indeed, it is widely recognized, even today, that "[s]ince [spite fence] statutes operate in derogation of the common law, they are strictly construed in favor of the party erecting the fence."Powell on Real Property § 62.05 (2010); see alsoPaul v. Catani, 275 N.Y.S.2d 299, 302 (N.Y. Sup. Ct. 1966) (narrowly construing New York's spite fence statute to exclude fences shorter than the statutorily designated ten foot height);Musumeci, 75 A.2d at 177 (holding that a five and one-half foot fence erected atop a retaining wall was not actionable under Rhode Island's Spite Fence Statute, which applied only to fences taller than six feet).
[17] The term similarly has been defined in a case relied upon by the deRaismeses as a "structure that marks a boundary or prevents intrusion or escape." See Bubis v. Kassin,878 A.2d 815, 821 (N.J. 2005) (emphasis added). While the deRaismeses also rely on Bubis to support their argument that a fence, to be an actionable private nuisance, need not be "on or near" the property line, that case is clearly distinguishable from the case at bar. There a sand berm topped with trees with a height of up to eighteen feet (located across the street from and blocking the ocean view of the complaining neighbor), was determined to be a fence violative, due to its height, of a restrictive covenant running in favor of both parties and the local zoning ordinance. Bubis did not involve a claim for private nuisance under a spite fence statute enacted in derogation of common law. Indeed, restrictive covenants and zoning ordinances are exactly how non-oceanfront property owners typically protect their rights to an ocean view. Absent such restrictive covenants or regulations, property owners, such as the Fergusons, would not be on notice as to any height restrictions on fences built or trees planted on their property.
[18] The only trees that are arguably at issue, given the "on or near" requirement of the Rhode Island Spite Fence Statute recognized by this Court, are those that the Fergusons planted in a row bordering Waterway in the front yard of their property, across Waterway from the deRaismeses' property. See Def.s' Mem. on "On or Near" Issue at 2-3. While the deRaismeses also apparently seek to characterize another row of trees planted by the Fergusons along the curve of their driveway that runs perpendicular to Waterway as well as another single tree as spite fences, there really is no question that those trees are not "on or near" the boundary line between the parties' properties. Id. Indeed, it is hard to see how a single tree, under any circumstances, could be deemed a "fence" under the statute. See Dowdell,847 A.2d at 829-31 (finding a row of trees not to be a "fence" but a "structure in the nature of a fence" under the Rhode Island Spite Fence Statute).
[19] The term "near" connotes "at," "within," "close to" or "not far distant from especially in place, time or degree." Webster's Third New International Dictionary at 1510.
[20] It is not appropriate, in this Court's judgment, to ask a jury to decide the question of whether the trees are "near" the property line when the evidence, when viewed in a light most favorable to the Plaintiffs, can lead to only one reasonable conclusion in that regard. See Anderson,477 U.S. at 250-51; Dragon, 936 F.2d at 33-34; Rocky HillSchool, Inc. v. St. of R.I., 668 A.2d 1241, 1243 (R.I. 1995). To allow the jury to define the term "near," as Plaintiffs suggest, is inappropriate given its plain meaning and could entice the jury impermissibly to find nearness, if it found spite, so as to find liability.
[21] Based on the record evidence in the case at bar, the physical positioning of the fences relative to the boundary lines in those cases was even closer than the distance between the deRaismeses' property line and the Fergusons' trees at issue here.
[22] While the Fergusons moved for summary judgment as to the deRaismeses' complaint in its entirety, their motion was limited to the cause of action for private nuisance stated in the complaint. As the deRaismeses also stated a claim for some ill-defined "primafacie tort" and the Fergusons did not address that portion of the complaint, the Fergusons' motion for summary judgment should have been styled, and will be treated, as a motion for partial summary judgment. In granting the Fergusons' motion, therefore, this Court leaves for another day the deRaismeses' action for primafacie tort. The parties are directed to make clear in any order submitted to the Court whether that cause of action remains for trial, as that may be an issue should entry of judgment under R.I. Super. Ct. R. Civ. P. 54(b) be requested and with respect to further pre-trial proceedings in this case.
 *Page 1